IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JERE MEDDAUGH

                              Plaintiff,

        v.                                              OPINION and ORDER

WOOD COUNTY DEPUTY                                           23-cv-230-wmc
JOHN MATTHEWS and
WOOD COUNTY,

                              Defendants.

---

Plaintiff Jere Meddaugh has brought this case under 42 U.S.C. § 1983, alleging that defendant Deputy John Matthews of the Wood County Sheriff's Office subjected him to unlawful seizure and used excessive force to effect a false arrest in violation of the Fourth Amendment.  (Dkt. #3.)  Plaintiff alleges further that defendant Wood County is liable under § 1983 for failing to properly train and supervise Deputy Matthews.  (*Id*.)  Plaintiff has filed a motion for partial summary judgment on his claim that Deputy Matthews unlawfully seized him.  (Dkt. #13.)  Defendants have filed their own motion for summary judgment on all of plaintiff's claims.  (Dkt. #21.)  After considering all of the pleadings, the admissible evidence, and the applicable law, plaintiff's motion for partial summary judgment will be denied, while defendants' motion for summary judgment will be granted in part with respect to Deputy Matthews' entitlement to qualified immunity from plaintiff's Fourth Amendment unlawful-seizure claims and the claims against Wood County for the reasons explained below.  However, plaintiff's Fourth Amendment excessive-force claim against Deputy Matthews will proceed to trial.

FACTS[1]

On April 26, 2020, Wood County Deputy Sheriff Matthews was driving through the City of Wisconsin Rapids to meet with a lieutenant for coffee at the Wood County Courthouse.  At around 12:39 a.m., he observed a blinking red light moving across a playground behind Howe Elementary School.  Because it was the middle of the night and a COVID lockdown was in effect, Deputy Matthews found a red blinking light suspicious, and he pulled his marked squad car onto the paved roadway next to the playground to investigate.  When Deputy Matthews turned on his spotlight and pointed it toward the blinking red light, he observed a man riding his bicycle.  Deputy Matthews pulled his squad car parallel with the man, who was dressed in black, and yelled at him to stop.  (Matthews Dep. (dkt. #16) at 32.)  However, the man, who was later identified as Jere Meddaugh, did not stop.  Instead, he "waved" at Deputy Matthews and pedaled away.

Meddaugh claims that he did not hear Deputy Matthews because he was wearing headphones and listening to music.  (Meddaugh Dep. (dkt. #31), at 73-74.)  Nor could Deputy Matthews see that Meddaugh was wearing headphones because he was dressed in a "black hoodie sweatshirt" with his hood pulled up.  (Matthews Dep. (dkt. #16) at 32.)  Getting no response, Deputy Matthews proceeded to follow as the man on the bicycle as travelled across 8th Avenue onto Oak Street, then pulled ahead and parked his squad car to introduce himself as a law enforcement officer and inquire what he was doing biking in

---

[1] Unless otherwise indicated, the facts set forth in this section are taken from the proposed findings of fact that are undisputed by the parties and supported by evidence as required by the court's procedures on summary judgment, which were provided to counsel for both sides as an attachment to the pretrial conference order.  (Dkt. #11.)

all black clothing behind the school in the middle of the night.  (Matthews Dep. (dkt. #16) at 63.)  After the man stopped and straddled his bicycle, Deputy Matthews also observed that he was wearing a portable police scanner with "Wood County Sheriff's Office" illuminated on the device (Incident Report (dkt. #22-2) at 1), although Meddaugh told Deputy Matthews that the device was a "walkie-talkie."  (Matthews Dep. (dkt. #16) at 64.)

At this point, Deputy Matthews felt he had even more reason to question Meddaugh about his activities.  (Matthews Dep. (dkt. #16) at 64.)  Deputy Matthews also contends that Meddaugh was uncooperative, providing only his first name and refusing to provide his last name.  Meddaugh acknowledges that he repeatedly refused requests by Deputy Matthews for his last name.  (Meddaugh Dep. (dkt. #31) at 83, 87-91.)  After his fourth request, Meddaugh told Matthews one more time that his name was "Jere," and explained that he was going to Kwik Trip to get something to eat and drink.  (*Id*. at 89.)  When Matthews asked again for Meddaugh to identify himself fully, Meddaugh told him that his last name was "Meadow," which he admits is different from the way his surname is actually pronounced.  (*Id*. at 90, 127-28).

When Deputy Matthews then turned to "radio it in," Meddaugh told Matthews that he was done talking and proceeded to leave.  (*Id*. at 93.)  While Meddaugh testified that he pedaled "normally away" (*id*. at 99), Deputy Matthews testified that Meddaugh "jumped on his bicycle, like a sprinter bicyclist, and pedaled [away] as quick as he could[.]"  (Matthews Dep. (dkt. #16) at 41.)  Intending to make an arrest for obstructing his attempt

3

to investigate whether Meddaugh was involved in any unlawful activity behind the school (*id*. at 63), Deputy Matthews ran after Meddaugh as he pedaled away.

Upon catching him, Meddaugh testified that Deputy Matthews "grabbed [him] by the backpack and pulled [him] off [his] bike and threw [him] to the ground." (Meddaugh Dep. (dkt. #31) at 93.)  While acknowledging that he "removed" Meddaugh from his bicycle as he was trying to get away, Matthews denies throwing him to the ground. (Matthews Dep. (dkt. #16) at 28-29.)  Once on the ground, the parties agree that Matthews and Meddaugh wrestled, with Deputy Matthews trying to get control of Meddaugh's hands as he was "flailing and getting up and swinging [his] arms[.]"  (*Id.* at 42.)  As to the flailing, Matthews explained at his deposition that he felt threatened during this struggle because Meddaugh kept trying to get his hands in his pocket.  (*Id*. at 27-28.)  Meddaugh also acknowledges that he tried to get up more than once, but Deputy Matthews kept jumping on his back.  (Meddaugh Dep. (dkt. #31) at 102, 106.)  Meddaugh further admits that he was "trying to get away" from Deputy Matthews, who Meddaugh claims kept throwing him "as hard as he could to the ground."  (*Id*. at 107.)  Finally, Meddaugh acknowledges hearing Deputy Matthews order him to "quit resisting," but explains that while screaming for help, he continued to struggle because he was afraid of Matthews.  (*Id*. at 114-15.)

At some point during their wrestling around, Deputy Matthews' radio was bumped, causing other officers to hear the struggle and report to the scene.  With help from Deputy Sheriff Robert Leibe and Wisconsin Rapids Police Officer Brad Burris, Deputy Matthews was ultimately able to place handcuffs on Meddaugh at 12:49 a.m.  A search incident to

the arrest uncovered a flip-style knife in Meddaugh's right pants pocket, and a search of Meddaugh's backpack uncovered four, small bags containing a white crystalline substance that tested positive for methamphetamine and weighed 58.3 grams. Wood County dispatch further informed Deputy Matthews that Meddaugh had six outstanding warrants and one open criminal misdemeanor.

Meddaugh was placed under arrest for resisting arrest/obstructing an officer and for the following other offenses: possession with intent to deliver methamphetamine; possession with intent to deliver on public school grounds; possession of drug paraphernalia; and misdemeanor bail jumping. Meddaugh later entered a plea of no contest to charges of possession with intent to deliver methamphetamine, but his conviction was reversed on appeal. *See State v. Meddaugh*, 2022 WI App 12, ¶ 25, 401 Wis. 2d 134, 972 N.W.2d 181 (Feb. 17, 2022). Specifically, the Wisconsin Court of Appeals concluded that the state had failed to show Deputy Matthew's initial investigatory stop was supported by a reasonable suspicion absent evidence that the school playground area was closed to the public at night. Thus, the court found that Meddaugh's motion to suppress should have been granted. *Id*. at ¶¶ 18, 25.

After his altercation with Deputy Matthews, Meddaugh was treated at the Wood County Jail with ibuprofen and an ice pack for injuries sustained during his arrest, which included a sprained wrist, scrapes on his face, a gash on the top of his head, and a sore lower back. (Meddaugh Dep. (dkt. #31) at 23-29.) Meddaugh also spent two years in state prison before his conviction for possession with intent to deliver methamphetamine was overturned. (*Id*. at 11.)

5

## OPINION

Seeking compensatory and punitive damages, Meddaugh sues Deputy Matthews under 42 U.S.C. § 1983 for false arrest and excessive force in violation of the Fourth Amendment.  (Dkt. #3, at 8-10.)  Meddaugh also sues Wood County for failing to train and supervise its deputies to ensure compliance with the Fourth Amendment.[2]  (*Id*. at 10-11.)

Meddaugh has moved for partial summary judgment on his claim of false arrest, arguing that there can be no factual or legal dispute that Deputy Matthews lacked a legal basis to stop him on the night of his arrest, and he is entitled to prevail under principles of collateral estoppel based on the state court of appeals' decision.  (Dkt. ##13-14.)  The defendants move for summary judgment on all of Meddaugh's claims, arguing that:  the decision to stop Meddaugh was reasonable; Deputy Matthews did not use force that was excessive under the circumstances; and regardless, he is entitled to qualified immunity.  (Dkt. #21, #26.)  Defendants further argue that Meddaugh has not offered sufficient

---

[2] Meddaugh lodges a separate claim for "indemnification" (dkt. #3, at 12), which is allowed under Wis. Stat. § 895.46 if an officer is found liable.  The court does not address this claim separately because, as defendants correctly note, there is no *private* cause of action for indemnification recognized under that statute, but rather an administrative procedure exists to seek that relief.  *See Jackson v. Graves*. No. 14-cv-1206, 2015 WL 5577527, at *4 (E.D. Wis. Sept. 22, 2015; *see also Williams v. Michalsen*, No. 19-cv-56, 2020 WL 1939136, at * 9 (E.D. Wis. April 21, 2020) ("If the individual officers are found liable, the indemnity mandated by § 895.46 will be triggered; the plaintiffs do not need to sue the county for that to happen.").

evidence to support a claim for municipal liability against Wood County and has certainly not shown that he is entitled to punitive damages. (*Id.*)

Summary judgment is only proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  While the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), the nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

## I.     False Arrest

Meddaugh moves for partial summary judgment on his claim that Deputy Matthews violated the Fourth Amendment by seizing him without reasonable suspicion or probable cause. Defendants also move for summary judgment on Meddaugh's claim of false arrest, arguing that neither the initial stop nor the ensuing arrest violated the Fourth Amendment, and regardless, that Deputy Matthews is entitled to qualified immunity.

Qualified immunity protects government officials from liability for damages unless they "violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Moreover, once the defense of qualified immunity is raised, the plaintiff bears the burden of defeating it by showing that: (1) the defendant violated a constitutional right; and (2) the constitutional right was clearly established at the time of the violation.  *Garcia v. Posewitz*, 79 F.4th 874, 879 (7th Cir. 2023).  To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).  Although a case directly on point is not required, a plaintiff must cite a factually analogous, controlling case showing that the right at issue was defined with particularity at the time of the stop and arrest.  *Id*.  Specificity is particularly important in the Fourth Amendment context.  *Id*.  "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'"  *Id*. at 105 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)).

Meddaugh's claim of false arrest is governed by the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A person is seized under the Fourth Amendment when a police officer terminates or restrains the person's freedom of movement by means of intentional physical force or show of authority.  *Brendlin v. California*, 551 U.S. 249, 254 (2007).  As a general rule, a seizure is reasonable under the Fourth Amendment "'only if based on probable cause' to believe that the individual has committed a crime."  *Bailey v. United States*, 568 U.S. 186, 192 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)).  The existence of probable cause "is an absolute bar to a claim of false

arrest asserted under the Fourth Amendment and section 1983." *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018) (citations omitted). "A police officer has probable cause that an individual has committed an offense (and to make an arrest) if the facts and circumstances known to him would warrant a reasonable person believing that the individual in question has committed or is committing a crime." *Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014). Because the required standard of proof is different for each, the court first examines the Officer's basis for the initial stop before turning to the subsequent arrest below.

### A. The Initial Stop

The parties appear to agree that Meddaugh was detained when he stopped his bicycle and Deputy Matthews introduced himself. (Matthews Dep. (dkt. #16) at 34-35.) At this point, Deputy Matthews credibly explains that he wanted to "have a conversation" with Meddaugh to obtain his identity and ask what he was doing behind the school in the middle of the night. (*Id*. at 35.)

Meddaugh principally argues that Deputy Matthews cannot show he had a reasonable suspicion to stop him because that issue was already resolved by the Wisconsin Court of Appeals, having held that Matthews failed to articulate sufficient facts during the criminal suppression hearing to lead a reasonable officer to suspect Meddaugh had committed a crime or was about to do so. (Dkt. #14, at 4, 6-9.) Under the doctrine of collateral estoppel, an issue of ultimate fact cannot be litigated a second time between the same parties if it has already "been determined by a valid and final judgment." *Riley v. Calloway*, 882 F.3d 738, 742 (7th Cir. 2018) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).

The defendants argue that collateral estoppel does not apply because issues of civil liability differ from the suppression of evidence that was litigated in Meddaugh's criminal

prosecution. (Dkt. #36, at 6-10.) More specifically, defendants point out that for the doctrine to apply against a litigant, there must be "sufficient identity of interest with a party to a prior proceeding" such that the litigant's interests in the prior case can be deemed to have been litigated. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 226, 594 N.W.2d 370 (1999).

Even if Deputy Matthews was in sufficient privity to the original, criminal lawsuit finding no basis to stop, however, the defendants correctly note that the Wisconsin state court of appeals did *not* have an occasion to consider his affirmative defense of qualified immunity during the suppression hearing. To begin, whether an officer is protected by qualified immunity is a separate legal question from whether an arrest was supported by a reasonable suspicion or probable cause. *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012). To the contrary, the Seventh Circuit and other courts have concluded that a state criminal proceeding should *not* be used as a basis for collateral estoppel or issue preclusion because the state court had *no* reason to consider whether the officer would be entitled to as to an assertion of qualified immunity from civil liability. *See Cannaday v. Sandoval*, 458 F App'x 563, 566 (7th Cir. Feb. 2, 2012); *Evans v. Matson*, No. 20-cv-476, 2022 WL 912031, at *3 (E.D. Wis. March 29, 2022); *Johnson v. Beckman*, 1:09-cv-04240, 2013 WL 1181584, at *3-4 (N.D. Ill. March 21, 2013). Because the Wisconsin court of appeals' ruling did not decide Meddaugh's false arrest claim nor address whether qualified immunity applies to Matthews' original stop, Meddaugh is not entitled to summary judgment on either basis.

As for the law in place at the time of the initial stop, a police officer may approach an individual for questioning or an identification check without triggering Fourth amendment concerns, provided that the initial encounter *remains* consensual. *See Terry v. Ohio*, 392 U.S. 1,

19 (1968); *see also United States v. Dayton*, 536 U.S. 194, 200-01 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."). This investigative detention (often referred to as a *Terry* stop) is defined as "a brief detention … giv[ing] officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity." *United States v. Boden*, 854 F.2d 983, 992 (7th Cir. 1988) (citing *Terry*). An officer may further briefly detain a person for questioning when the officer has "specific and articulable facts" sufficient to give rise to a reasonable suspicion the person has committed or is committing a crime. *United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999). "Reasonable suspicion demands only a minimal level of objective justification, . . . , which is something more than a hunch but less than probable cause and significantly less than a preponderance of the evidence." *United States v. Olson*, 41 F4th 792, 800 (7th Cir. 2022) (citations and internal quotation marks omitted). "Whether reasonable suspicion of criminal activity justified a *Terry* stop is a fact-intensive, objective inquiry encompassing the totality of the circumstances known to the officers at the moment of seizure." *Id*.

Having apparently done nothing beyond riding his bike through a school playground in dark clothes late at night, Meddaugh argues that he rightfully refused to cooperate with Deputy Matthews' very first effort to communicate with him, and therefore, the deputy lacked a sufficient reason to conduct even an investigatory stop. In support, Meddaugh points to *Brown v. Texas*, 443 U.S. 47 (1979), in which the Supreme Court held that law enforcement cannot stop and demand identification from an individual solely because he "looked suspicious." *Id*. at 52. However, defendants argue that *Brown* is not based on analogous facts because that case

concerned a stop in broad daylight, while Deputy Matthews had additional reasons to be suspicious.

The facts articulated by Deputy Matthews now in support of his initial stop are not just that he observed Meddaugh riding a bicycle and coming from behind a public elementary school after midnight while wearing all black clothing, but also that he worked nights on patrol in the area of the stop for two years and had never seen anyone walking or biking around the school at that hour.  According to Deputy Matthews, this made Meddaugh's presence unusual, and therefore suspicious based on his own experience.  (Matthews Dep. (dkt. #16) at 52.) Further, defendants note that there *is* a local ordinance that prohibits loitering on school premises at that time of night.  (Dkt. #26, at 7-8.)  Specifically, City of Wisconsin Rapids Ordinance 25.14(1) states, "[n]o person shall loiter, loaf or lounge in or about any park, parkway, *school ground*, or other public ground or place in the city of Wisconsin Rapids between the hours of 11:00 in the evening and 6:00 the next morning."  (Emphasis added.)  However, the record before the court does not support a finding that Deputy Matthews was aware of this loitering ordinance at the time of the stop.  Thus, the local ordinance on loitering does not appear to have been mentioned during the suppression hearing.  Indeed, the state Court of Appeals affirmatively noted that there was *no* evidence in the record showing that Meddaugh's presence on school grounds after midnight was prohibited.  *Meddaugh*, 401 Wis. 2d at ¶ 18.

At the suppression hearing, instead of citing the City ordinance, the state apparently chose to focus on the fact that there was a stay-at-home order in effect during April of 2020, due to the COVID-19 pandemic, and that Deputy Matthews thought Meddaugh's presence was unusual under the circumstances, including COVID restrictions and the lateness of the hour.  *Id*. at ¶¶ 16, 20-21.  In addition, Deputy Matthews found it suspicious that Meddaugh

was not responding to his yelling "stop," while following him in his marked squad car and putting the spotlight on him.  (Matthews Dep. (dkt. #16) at 38.)  Instead, Meddaugh pedaled away and refused to stop.  Under these circumstances, defendants argue that an investigatory stop is authorized in cases of flight at the sight of a police officer, which "is undeniably suspicious behavior" and "certainly gives rise to a reasonable suspicion that all is not well." *State v. Alexander*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990).

Moreover, because his headphones were on under his hoodie, Meddaugh neither disputes that he saw Deputy Matthews as he biked through the school premises, nor that he failed to heed the deputy's repeated orders to stop, although he disputes increasing his speed or otherwise "fleeing" at the sight of Deputy Matthews in a suspicious manner.  Meddaugh also disputes that riding a bicycle across a school playground at approximately 1:00 am qualifies as loitering.  Applying the objective standard, it is also doubtful that a reasonable officer in Deputy Matthews' position could have reached such a conclusion.[3]  While the court is not prepared to find that an adjudication against the state as to the legality of an initial stop precludes the officer from relitigating that question on a fuller record in response to a claim brought against him personally for a constitutional violation under § 1983, even a fuller record here leaves this court to conclude that an objective officer lacked sufficient basis to stop Meddaugh as he biked away into the night.

---

[3] Black's Law Dictionary defines the offense of loitering as "remaining in a certain place (such as a public street) for no apparent reason."  Black's Law Dictionary 1129 (11th ed. 2019).  The Model Penal Code defines loitering to include "prowl[ing] in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity."  Model Penal Code § 250.6.  The Model Penal Code adds that if loitering is suspected a police officer should ask the suspect "to identify himself and explain his presence and conduct."  *Id*.

However, this still leaves the final question:  whether a reasonable officer in Deputy Matthews' position could have *believed* there was a basis to make an investigatory stop under the circumstances?  In such a case, even if the decision to conduct an investigative stop was mistaken, Matthews would still be entitled to qualified immunity from an award of monetary damages under § 1983.  (Dkt. #26, at 27.)  A police officer is entitled to qualified immunity in the Fourth Amendment context if a reasonable officer could have believed that there was "arguable" reasonable suspicion for an investigative stop.  *See Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014); *Rouei v. Village of Skokie, Ill.*, 61 F. Supp. 3d 765, 778 (N.D. Ill. 2014).

Here, while the objective facts indicate that Deputy Matthews attempted to stop Meddaugh to question him simply for riding his bicycle on public school grounds after midnight while clad in black, which he was free to do, the facts are also that the deputy did not stop him until after Meddaugh appeared to refuse to respond and continued riding. Although this Meddaugh was also free to do, the case law is far less clear that his apparently deliberate lack of a response to a straightforward command gave rise to a generalized suspicion that he could have been involved in criminal activity.  Stated another way, Deputy Matthews had arguable reasonable suspicion at that time to initially detain and question Meddaugh under *Terry*.  Accordingly, Deputy Matthews is entitled to qualified immunity for reasonably, though mistakenly, conducting a *Terry* stop when he encountered Meddaugh dressed in all black coming from behind the school after midnight and refusing to stop.  *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that [reasonable suspicion] is present, and . . . in such cases those officials — like other officials who act in ways they reasonably believe to be lawful — should not be personally liable."); *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)

14

("Officers are entitled to summary judgment on qualified immunity grounds if their actions were not objectively unreasonable at the time they were taken.").

## B. Continued Stop/Arrest

Deputy Matthews next argues that after the initial stop, he had grounds to arrest Matthews for obstructing his investigation after Meddaugh lied about wearing a police scanner and refused repeated requests for his last name, and then abruptly left on his bicycle. (Matthews Dep. (dkt. #16) at 63-65, 73-74.)  Whether Deputy Matthews had probable cause to arrest Meddaugh at this point presents a closer legal question than his decision to make the initial stop.  Under Wisconsin law, "whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor."  Wis. Stat. § 946.41(1).  A person violates this statute when "the conduct of the defendant prevents or makes more difficult the performance of the officer's duties."  *State v. Grobstick*, 200 Wis. 2d 242, 249, 546 N.W.2d 187, 190 (1996).  Again, the question is whether an objective officer had grounds to arrest on the facts presented to Deputy Matthews.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004);  *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007) (courts assess probable cause objectively, considering the facts as they reasonably appeared to the arresting officer, "seeing what he saw, hearing what he heard, and so forth").

Meddaugh acknowledged during his deposition that after initially refusing to give his full name and telling Matthews his police scanner was a walkie-talkie, he told Deputy Matthews his last name was "Meadow," which was a deliberate mispronunciation.  (Meddaugh Dep. (dkt. #31) at 71, 83-91, 127-28.)  Certainly, possession of a police scanner would contribute to an objective officer's reasonable suspicion for an investigative detention, as would his blatant lie

15

otherwise, or at the very least raise an arguably reasonable suspicion that a basis existed to prolong the investigative stop. *E.g., McIllwain v Weaver*, 686 F. Supp. 2d 894, 903 (E.D. Ark. 2010) (discussing an officer's testimony in support of a reasonable suspicion that, in his experience, "people who travel with police scanners normally transport drugs"); *United States v. Ruffcorn*, 8:01CR286, 2002 WL 1964744, at *3 (D. Neb. Aug. 26, 2002) (finding circumstances sufficient to create a reasonable suspicion where officers observed occupants of a vehicle suspected of involvement with drug activity in possession of a police scanner, which in their experience was generally found only in vehicles belonging to "the police or to criminals").

Meddaugh also admits that he refused to answer any further questions, then abruptly left as Deputy Matthews attempted to radio in his name. (Meddaugh Dep. (dkt. #31) at 93-94.) Still, Meddaugh argues that his actions in refusing to answer further questions and attempting to leave the location did not constitute obstruction in violation of Wis. Stat. § 946.41(1) because Deputy Matthews was not acting with "lawful authority" when he attempted to arrest him. Meddaugh argues further that he had no obligation to provide Deputy Matthews with his last name, citing to *Henes v. Morrisey*, 194 Wis. 2d 338, 533 N.W.2d 802 (1995), in which the Wisconsin Supreme Court held police had a reason to stop a defendant on suspicion of having stolen a motor vehicle as he walked down the highway at 2:36 a.m., but did not have probable cause to arrest him for obstructing their investigation based solely upon his refusal to identify himself during the *Terry* stop.

If a police officer lacks a reasonable suspicion to stop a person, courts have held that he also lacks "lawful authority" or probable cause to arrest him for obstruction. "'[L]awful authority,' as that term is used in Wis. Stat. § 946.41(1), requires that police conduct be in

compliance with both the federal and state Constitutions, in addition to any applicable statutes." *Pullen v. House*, 88 F. Supp. 3d 927, 939 (W.D. Wis. 2015) (quoting *State v. Ferguson*, 2009 WI 50, ¶¶ 15–16 767 N.W.2d 187, 194, 317 Wis.2d 586, 600.)  If Deputy Matthews did not have authority to detain Meddaugh under the Fourth Amendment, then he did not have lawful authority to give him orders either.  *Id.* (citing *Brunner v. McKillip*, 488 F. Supp. 2d 775, 784-85 (W.D. Wis. 2007) ("Without lawful authority to make [a] demand in the first place, [the officer] would have no probable cause to believe plaintiff was violating § 946.41(1) by ignoring his directive.")).  Even viewing the evidence in a light most favorable to defendant, who had grounds to continue to detain and question Meddaugh while reporting in his name for a warrant check, Deputy Matthews still lacked grounds to arrest.  However, at that point, it is undisputed that Meddaugh forced the issue by attempting to flee, giving the deputy cause to both suspect some kind of criminal activity and probable cause to arrest Meddaugh for obstruction.  *See Clark v. Rock Cnty., Wis.*, No. 22-cv-121-jdp, 2023 WL 4623511, at *7 (W.D. Wis. 2023) ("'When a subject of reasonable suspicion fails to comply with a lawful directive to submit to an investigative stop, and instead flees, there is probable cause to arrest the subject for obstructing an officer' under Wis. Stat. § 946.41.") (quoting *State v. Conner*, 2010 WI App 145, ¶ 13, 330 Wis. 2d 96, 791 N.W. 2d 404); *see also United States v. McAlister*, No. 06-cr-142, 2007 WL 101215, at *8 (E.D. Wis. Jan. 10, 2007) (concluding that officers had a lawful basis to detain the defendant on suspicion of loitering and that there was probable cause to arrest him for obstructing because his refusal to comply with their lawful command that he stop likely impeded their investigation and his flight made more difficult the officers' official duty to investigate).  Accordingly, plaintiff cannot demonstrate a Fourth Amendment violation.

Even if the court were to leave the question of probable cause for a jury, *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013), these same undisputed facts at least establish *arguable* probable cause for purposes of establishing entitlement to qualified immunity.   Accordingly, defendant Matthews is also entitled to summary judgment on Meddaugh's Fourth Amendment false-arrest claim on qualified immunity grounds.

## II.     Excessive Force

Next, Meddaugh contends that Deputy Matthews used excessive force by yanking him from his bicycle and throwing him to the ground.   Because the alleged use of force occurred during an arrest, Meddaugh's claim similarly arises under the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).   "When a law enforcement officer is alleged to have used excessive force in the course of an arrest, the issue is whether the officer's actions were 'objectively reasonable' in light of the situation the officer faced."  *Id*. at 397.   The basic question is whether the officer used "greater force than was reasonably necessary" under the circumstances.  *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016); *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009).   This determination is made from the perspective of a "reasonable officer" in light of the totality of the circumstances known to the officer, without regard to his actual intent or subjective beliefs.  *Graham*, 490 U.S. at 397.

In considering the totality of the circumstances, courts must remember that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."  *Id*.  Thus, to determine whether an officer's actions were objectively reasonable, courts consider factors like:  (1) the severity of the crime at issue; (2) whether the suspect

poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade the arrest by flight.  *Id*. at 396; *see also Gupta v. Melloh*, 19 F.4th 990, 1000-01 (7th Cir. 2021).

In this case, the parties dispute the amount of force that Deputy Matthews used to remove Meddaugh from his bicycle.  Meddaugh claims that Matthews dragged him from the bicycle by yanking on his backpack and throwing him violently to the ground, resulting in his head and face striking concrete.  (Meddaugh Dep. (dkt. #31) at 101.)  Deputy Matthews denies that he threw Meddaugh from his bicycle at all, stating instead that he only used force that was necessary to secure Meddaugh's hands while he was actively resisting.  (Matthews Dep. (dkt. #16) at 26-29.)  At the time Deputy Matthews grabbed Meddaugh from his bike, he was at most under suspicion for unspecified criminal activity and posed no threat to Deputy Matthews or others.  Meddaugh contends, moreover, that the entire time he was grappling with Deputy Matthews he never tried to strike him, but rather repeatedly asked "why" he was assaulting him while screaming for help.  (Meddaugh Dep. (dkt. #31) at 98-102.)  Although Meddaugh admits that he was actively trying to get away from Deputy Matthews, he explains it was because he did not believe that Matthews had any basis to stop him, much less detain him.  Meddaugh further argues that since the stop was unlawful, *any* force Deputy Matthews used was objectively unreasonable. Accepting Meddaugh's version of events, the court agrees that a jury *could* reasonably conclude that Deputy Matthews' use of force was excessive.

Defendants again argue that even if Deputy Matthews' use of force violated the Fourth Amendment, he is entitled to qualified immunity.  To defeat an officer's claim of

19

qualified immunity in this context, the plaintiff must either: (1) identify a closely analogous case that established a right to be free from the type of force the officer used; or (2) show that the force was so plainly excessive that, as an objective matter, the officer would have been on notice that he was violating the Fourth Amendment. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015). Although the court finds that qualified immunity is enough to protect Deputy Matthews from choosing to stop Meddaugh's fleeing from further questioning, there are disputed facts about the degree of force used to remove Meddaugh from his bicycle for that questioning or even the possible commission of a crime that appeared to involve no threat of harm to anyone, Deputy Matthews included.

Whether it would have been clear to any objectively reasonable officer in Deputy Matthews' position that his use of force was plainly excessive is bound up in these disputed questions of fact. On the one hand, "[a]n officer who has the right to arrest an individual also has the right to use some degree of physical force to effectuate the arrest." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). On the other hand, "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). Where the facts surrounding the use of force are in dispute, a jury must decide whether a reasonable officer would have understood that the force used was excessive. *See Abdullahi v. City of Madison*, 423 F.3d 763, 774-75 (7th Cir. 2005) (when the nature of the officer's conduct remains disputed, a court cannot resolve qualified immunity defense prior to trial). Because the court finds that a genuine issues of material fact exist as to whether Deputy Matthews' actions in securing Meddaugh's seizure for additional questioning were

20

excessive, summary judgment on both the excessive-force claim and the defense of qualified immunity must be denied.

### III.     Municipal Liability

Meddaugh has also sued Wood County under 42 U.S.C. § 1983, claiming that it should be found liable for failing to train or supervise its deputies adequately.   Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), municipalities and other local governments may be liable if an employee injured the plaintiff in executing of an official policy, custom, or widespread practice.   To establish liability under *Monell*, however, it is usually necessary for the plaintiff to present "evidence of a prior pattern of similar constitutional violations."   *Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 234 (7th Cir. 2021).   The defendants correctly point out that Meddaugh has presented no such evidence here, and Meddaugh agrees that his *Monell* claim can be dismissed.   (Dkt. #28, at 22.) Therefore, the defendants are entitled to summary judgment on the claim against Wood County.

### IV.     Punitive Damages

Finally, Meddaugh argues that he is entitled to punitive damages because Deputy Matthews acted with callous disregard for his constitutional rights when placing him under false arrest, then using excessive force.   Defendants argue that Meddaugh is not entitled to punitive damages on the facts alleged.   (Dkt. #26, at 21-23.)   Punitive damages are recoverable in an action under 42 U.S.C. § 1983 where the defendant acted with a reckless or callous disregard for the federally protected rights of others.   *Smith v. Wade*, 461 U.S. 30, 35, 51 (1983); *Woodward v. Correctional Medical Svcs. Of Ill., Inc*., 368 F.3d 917, 930 (7th Cir. 2004).

Whether a defendant's conduct has met the threshold for punitive damages is a question of fact for the jury.  *Smith*, 461 U.S. at 56.

Considering the disputed facts in a light most favorable to the plaintiff, as nonmovant, a reasonable jury could conclude that Deputy Matthews acted with reckless indifference to his rights under the Fourth Amendment to be free from the excessive use of force, though not from an unreasonable seizure for reasons already explained above.  Accordingly, the court will deny the defendants' request for summary judgment on the plaintiff's claim for punitive damages.

ORDER

IT IS ORDERED that:

1. Plaintiff Jere Meddaugh's motion for partial summary judgment (dkt. #13) is DENIED.

2. Defendants motion for summary judgment (dkt. #21) is GRANTED as to the claims against Wood County and the defense of qualified immunity from the plaintiff's claims of unlawful seizure but DENIED with respect to the claims against Deputy John Matthews for excessive force and related punitive damages.

Entered this 14th of August, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge