IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JERE MEDDAUGH

                    Plaintiff,

  v.                                                 OPINION and ORDER

WOOD COUNTY DEPUTY                              23-cv-230-wmc
JOHN MATTHEWS,

                    Defendant.

---

For the reasons discussed during last Thursday's second pretrial conference and those set forth below, the court has concluded that the grant of qualified immunity to Wood County Deputy John Matthews for his initial interaction with plaintiff Jere Meddaugh was improvidently granted before trial. Instead, upon further reflection and submission of the parties' additional materials for trial on the remaining claim of excessive force, the court is convinced that if the jury were to credit fully plaintiff's version of the parties' initial interaction as a stop, rather than an initial, voluntary encounter, then qualified immunity may not apply to Matthew's conduct from the outset. Regardless, since all of the facts surrounding the decisions and actions by Deputy Matthews will have to be presented to the jury at trial under the "totality of the circumstances" test for determining whether excessive force was used in taking Meddaugh into custody, it would make more sense to await a decision on the application of qualified immunity to the parties' initial interaction until all facts are put on the table at trial.

Specifically, there is a factual dispute as to whether or not deputy Matthews effected the equivalent of a *Terry* stop by abruptly pulling up in front of the plaintiff as he was

biking away from a school in the middle of the night, apparently because Meddaugh had not responded to his shining a spotlight on him and engaging his blinking red lights, other than to "wave" as he pedaled away. While the deputy characterizes his decision as simply pulling ahead, parking his squad car and introducing himself to inquire what Meddaugh was doing biking in all black clothing in the middle of the night, a jury could find that this was not the equivalent of a simple request to identify himself, and even if it were, that Meddaugh had no obligation to respond to the law enforcement officer. In either event, absent evidence that Meddaugh attempted to flee (a disputed fact for the jury to decide), the case law is sufficiently unambiguous that it may have been inappropriate for the court to extend qualified immunity to Deputy Matthew for stopping Meddaugh, asking follow up questions to which he had no obligation to answer, and establishing a basis of reasonable suspicion to detain him further in order to confirm his identity. *See White v. City of Chicago*, No. 18-cv-1404, 2023 WL 2349602, at *12 (N.D. Ill. March 3, 2023) (concluding that there was "a triable issue as to whether the officers had made 'a reasonable error in determining whether there was reasonable suspicion'" to support qualified immunity for a false *Terry* stop)(quoting *Jewett v. Anders*, 521 F.3d 818, 824 n. 4 (7th Cir. 2008))(alteration adopted); *Carter v. City of Wauwatosa*, No. 19-cv-1422, 2022 WL 3228046, at *12 (E.D. Wis. Aug. 10, 2022) ("While disputed material fact issues and credibility determinations remain as to whether Officer Kaine had reasonable suspicion of the alleged robbery, the Court cannot find that he is protected by qualified immunity as to the initiation of the traffic stop.").

At summary judgment, this court nevertheless concluded that "deputy Matthews credibly explained that he wanted to 'have a conversation' with Meddaugh to obtain his

identity and ask what he was doing in the middle of the night." In this case, therefore, the court improvidently determined that deputy Matthews' approach could *only* be viewed as initiating a consensual encounter, without accounting for the fact that a reasonable jury could find that rather than a friendly encounter, defendant's manner of stopping plaintiff was from the beginning at best a "brief detention" akin to a *Terry* stop, and as such, required some "specific and articulable facts" sufficient to detain him initially. Moreover, again absent a jury crediting the officer's claim that Meddaugh suddenly raced away upon seeing the squad car, the case law in unambiguous that Meddaugh had *no* obligation to stop, much less to respond to Officer Deputy Matthews' inquires.

The court is *not* deciding that Deputy Matthews' decision to initiate an investigatory stop is sufficiently on all fours with *Brown v. Texas*, 443 U.S. 47 (1979), since that stop occurred in broad daylight, while deputy Matthews initiated his initial stop after midnight as Meddaugh emerged riding a bicycle from behind a public elementary school. However, the court does find that there are sufficient disputed facts about whether the officer's first interaction with Meddaugh was in the nature of a consensual encounter or an initial stop, which are likely to be better understood and decided in the context of a full trial of the evidence, making any grant of qualified immunity premature until a full examination of the evidence at trial. *See Davis v. Allen*, 112 F.4th 487 (7th Cir. 2024) (affirming district court's withholding a determination of qualified immunity until full explication of evidence at trial). Accordingly, the court will issue a revised set of closing instructions allowing the jury to conclude, should the evidence support it, that Deputy Matthews had performed an investigative stop from the outset. *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). In light of the fact that liability questions will be posed to the jury as to both the nature of

the parties' initial interaction *and* possible use of excessive force in his arrest, the court has determined that bifurcation of the case between liability and damages is appropriate, so it will also circulate separate damage instructions and special verdict questions as to each phase of trial.

Finally, the court is well aware that this shift in its position on qualified immunity may change the calculus and approach of the parties at trial, at least somewhat, and despite already giving the defendant an extended period of time to prepare for trial, some additional time may be required by one or both parties. Accordingly, the court encourages counsel for each side to discuss whether a further extension of the trial date is appropriate, and if they agree, to propose an acceptable time for trial to procced on one of the following weeks available in the court's calendar: October 7, 15 or 21 or November 4 or 18. Failing that, the court will plan to take up the question of timing at this Thursday's videoconference.

Entered this 23rd of September, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge